UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JOHNNY L. WRIGHT                                                                                    PLAINTIFF

v.                                       Civil No. 1:14-CV-01037-SOH-BAB

DETECTIVE SCOTT HARTWELL, BILLY                                                   DEFENDANTS
WHITE, and TREY PHILLIPS

**REPORT AND RECOMMENDATION**

This is a civil rights action filed by Plaintiff, Johnny L. Wright, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment.  ECF No. 60.  A hearing was held on May 26, 2016, to allow the Plaintiff to give a sworn oral statement in response to the Motion.[1]  ECF No. 64.  After careful consideration of the briefing and sworn statement of the Plaintiff, the undersigned makes the following Report and Recommendation.

**1.      BACKGROUND**

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") Pine Bluff Unit.  Plaintiff's Complaint is difficult to follow, but he clarified his claims at the hearing. The crux of Plaintiff's Complaint is that his constitutional rights were violated when he was

---

[1] As this was a sworn oral response to a Motion for Summary Judgment the Court did not allow cross examination of Plaintiff.

arrested and imprisoned for a parole violation with an invalid arrest warrant completed by Defendant Hartwell.[2]

Defendants filed their Summary Judgment Motion on April 25, 2016.  ECF No. 60. Plaintiff filed his proposed hearing exhibits on May 9, 2016.  ECF No. 63.

Plaintiff appeared by videoconference and gave a sworn statement in response to the Summary Judgment Motion on May 26 2016.  ECF No. 64.

At the beginning of the hearing, Plaintiff agreed with the Court's summary of his claims, but wished to add additional claims.  Specifically, he wished to add claims for malicious prosecution, retaliation, and racial bias.  The Court explained it was not necessary to read the exhibits verbatim, and asked Plaintiff to simply explain his claims against each Defendant.

Plaintiff testified that on April 27, 2013, Plaintiff and a friend were approached by two El Dorado police officers while walking. The officers told him his neighbor had reported him firing a gun around April 27, 2013.  Plaintiff referenced his Exhibits 1 and 2. Exhibit 1 is a radio traffic log for the El Dorado police department. The highlighted portions indicated police officers speaking with two individuals on April 27 2016.  No arrest made.  ECF No. 63, p. 3.  Exhibit 2 is an investigator's activity summary.  ECF No. 63, p. 4.  It indicates Michelle Pumphrey as the victim.  Plaintiff states Ms. Pumphrey is the neighbor who called in the report.  He stated he was not on good terms with this neighbor for a variety of reasons.  The summary indicates Officer Bob Willis filed the incident report on April 29, 2013.  Plaintiff's criminal history was received on May 30, 2013, and an arrest warrant was signed by a Union County District Judge that same day for Possession of a Firearm by a Certain Person.  Defendant Trey Phillips arrested Plaintiff for that

---

[2] Submissions by Defendants indicate Defendant Hartwell's name is actually Harwell. However, for consistency, he will be referred to as Hartwell in this document.

warrant on July 23, 2013. A parole revocation hearing was held on September 10, 2013, and Plaintiff's parole was revoked. On October 23, 2013, the Deputy Prosecuting Attorney filed an Order of *nolle prosequi* for the criminal charge of Possession of a Firearm by a Certain Person. This was signed by a Union County District Judge that day. Plaintiff pointed out that he denied the charges and refused to speak to investigators.

Plaintiff testified he was wrongfully arrested due to the poor investigation by Officer Hartwell. He claims Hartwell took the incident report and changed it so he could get a warrant signed.

Plaintiff testified there were discrepancies between the incident report from Officer Willis and the affidavit filed by Officer Hartwell. Plaintiff referenced his Exhibits 4 and 5. ECF No. 63, pp. 8-9. Exhibit 4 is an incident report dated April 29, 2013 by Officer Willis. This report indicates Willis was approached by Michelle Pumphrey, who stated she had called the police that weekend to report her neighbor firing a pistol (a black handgun) within city limits. She also reported he was a convicted felon and believed he was on parole. The report indicates Willis checked Plaintiff's status and found he was a convicted felon on supervised parole, with "an extensive past criminal history including violent charges."

Plaintiff testified the arrest warrant affidavit said Officer Willis was summoned to Pumphrey's residence. Exhibit 5 is the arrest warrant affidavit filed by Officer Hartwell. The affidavit states Officer Willis was summoned to 1011 Taylor Street. Plaintiff noted that Pumphrey told the Officer he was a felon, and Hartwell changed her words. Plaintiff complains Hartwell used hearsay.

Plaintiff stated he did not disagree with the facts supplied by Pumphrey. He disagreed with how Hartwell changed the facts in his arrest warrant. Plaintiff stated Hartwell had no evidence, he simply used Plaintiff's criminal history. Plaintiff then referenced Interrogatory 10. ECF No. 63, p. 24. The address on the interrogatory said West Taylor instead of East Taylor, and stated this was an entirely different area. The Court asked Plaintiff to state what Hartwell did prior to the arrest. Plaintiff testified Hartwell did not investigate. He just used the incident report and changed it to make the affidavit "meaty and juicy" for the judge.

Plaintiff testified Defendant White, as Chief of Police, should have had knowledge of Hartwell's actions. Plaintiff testified Defendant White did not have any direct involvement with his arrest.

Plaintiff testified Defendant Phillips was just doing his job when he arrested Plaintiff with the warrant, but the warrant should never have been issued.

Plaintiff noted his neighbor Pumphrey was subpoenaed for the parole revocation hearing and did not show up. Plaintiff confirmed that this occurred after the arrest. Plaintiff noted his Exhibit 31, Defendant Hartwell's Responses to Plaintiff's requests for admissions. Plaintiff noted Hartwell had the wrong address and admitted it again. Plaintiff pointed out he admitted he did not investigate the vicinity of West Taylor Street. ECF No. No. 63, p. 44.

Defense counsel was permitted the opportunity to make a statement. Counsel noted that in Plaintiff's Exhibit 30, the Plaintiff admitted at his parole hearing to possessing and firing a BB gun on April 27, 2013. ECF No. 63, p. 39. The Court asked Plaintiff about the BB gun. Plaintiff admitted the BB gun, but stated it belonged to his grandson and they were shooting a can. Defendant Counsel notes it is not clear if the claim of retaliation is against Officer Hartwell or

Pumphrey, but is addressed. Defendant counsel noted the claim of malicious prosecution is not in the Complaint and does not need to be addressed.

Plaintiff was given the opportunity to respond to the statements. Plaintiff testified his neighbor retaliated against him using the El Dorado police department. Hartwell retaliated against him because Hartwell was involved with a 2006 case against Plaintiff which was nolle prossed as well. Plaintiff testified he did not have any contact with Hartwell between the 2006 case and his arrest in 2013. Plaintiff was on parole until this incident. The Court asked Plaintiff the basis of the retaliation claim. Plaintiff referenced his Exhibit 31, and read paragraph 16 in the answers to his requests for admission. ECF No. 63, p. 44. In this paragraph, Plaintiff asked Defendant Hartwell if he remembered the charges in the 2006 incident being nolle prossed. Defendant Hartwell answered he did not recall the disposition of the charges, but the records indicate that an order to nolle prosse was entered on August 6, 2007 on the condition that Plaintiff pay $250 restitution to damage done to Defendant Hartwell's watch upon his release from the ADC. Defendant Hartwell stated he had not received that restitution to date. ECF No. 63, pp. 44-45. Plaintiff testified this showed retaliation because Hartwell added the restitution claim. Plaintiff testified this showed retaliation because Hartwell evidently wanted $250.00.

After the charges in this case were dismissed, Plaintiff testified he was released and his parole hold dropped.

**2.    LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the

5

disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**3.     DISCUSSION**

    **A.     Fourteenth Amendment Claim**

Plaintiff alleged his arrest violated the Fourteenth Amendment. "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976). Because Plaintiff failed to make any allegations supporting any inference that his arrest was motivated by racial animus, he failed to state a Fourteenth Amendment claim.

    **B.     Official Capacity Claims**

Plaintiff fails to state an official capacity claim against the City of El Dorado. Under Section 1983, a defendant may be sued in either his individual capacity, or in his official

capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir. 1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

Plaintiff failed to make any allegations of a custom or policy of the City of El Dorado which violated his rights. Plaintiff therefore failed to state an official capacity claim against the City of El Dorado.

### C. Chief of Police White

Plaintiff's claim against Defendant White is based solely on the theory of *respondeat superior*. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional

activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper*, 130 F.3d at 1314 ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). In other words, Defendant White cannot be held liable merely because he holds a supervisory position with the El Dorado Police Department.

Plaintiff testified he had no direct involvement with Defendant White concerning his arrest. Plaintiff testified he was suing Defendant White because he was the Chief of Police and therefore should have known about Hartwell's actions. Plaintiff's testimony indicates Defendant White had no personal involvement in or direct responsibility for Plaintiff's arrest. Plaintiff therefore fails to state a claim against Defendant White.

### C. Officer Phillips

Plaintiff testified he sued Defendant Phillips for arresting him on a warrant that should not have been issued. Plaintiff does not allege Defendant Phillips took any part in obtaining the arrest warrant, or acted unreasonably in any other way. He testified he thought Defendant Phillips was only doing his job in making the arrest, but that the arrest warrant should not have been issued. An arrest of the person named in a facially valid warrant does not violate the Fourth Amendment. *Hill v. Scott*, 349 F.3d 1068, 1072-73 (8th Cir. 2003) (elaborating on the well-established rule that "mistaken arrest based on a facially valid warrant does not violate the Fourth Amendment if the

officers reasonably mistook the arrestee for the person named in the warrant.") Accordingly, Plaintiff therefore fails to state a claim against Defendant Phillips.

### D. Detective Scott Hartwell

Plaintiff testified Defendant Hartwell did not properly investigate the facts before seeking the arrest warrant. He alleges Hartwell simply relied upon Officer Willis' incident report from Plaintiff's neighbor, Ms. Pumphrey, and Plaintiff's criminal record. Plaintiff further testified Defendant Hartwell changed the facts from the Willis incident report to make the facts "meatier and juicier" for the judge in order to obtain the arrest warrant. Finally, Plaintiff testified Defendant Hartwell sought the warrant in retaliation for the nolle prosse of a 2006 case against Plaintiff. In their brief, Defendants provided additional context for the retaliation claim. Plaintiff filed a §1983 lawsuit against Hartwell for an arrest in 2006 in case no. 1:06-cv-01089-HFB-BAB. This case was dismissed with prejudice. ECF No. 62, p. 11. When asked about this at the hearing, Plaintiff referenced an interrogatory answer by Defendant Hartwell in which Hartwell noted he did not remember the incident, but the records for the 2006 case indicated Plaintiff was to pay Hartwell $250 in restitution for the nolle prosse. When queried about this, Plaintiff testified Hartwell had added the monetary requirement because he evidently wanted $250.00 from Plaintiff. This response, on its face, did not indicate a retaliatory motive in relation to the arrest warrant. Further, Plaintiff testified there was no contact between himself and Hartwell between 2006 and the instant arrest. As Plaintiff has provided no facts to support a claim of retaliation, the retaliation claim will not be discussed further.

This leaves Plaintiff's claim that Hartwell did not adequately investigate the facts before seeking the arrest warrant.

Unless an officer engages in intentional or reckless misrepresentation in order to gain the arrest warrant, there can be no constitutional violation. *See Franks v. Delaware*, 438 U.S. 154 (1978); *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000) (citing *Franks* for the rule that a "warrant based upon [an] affidavit containing 'deliberate falsehood' or reflecting 'reckless disregard for the truth' violates Fourth Amendment"). "To show reckless disregard for the truth, we do not look simply at whether a statement included in the affidavit was true; rather, we ask whether, when looking at all the evidence available to the officer, the officer "must have entertained serious doubts as to the truth of his [or her] statements or had obvious reasons to doubt the accuracy of the information he [or she] reported." *United States v. Neal,* 528 F.3d 1069, 1072 (8th Cir. 2008). If there is evidence of recklessness, the warrant is not automatically void. Rather, the solution is to edit out the false or reckless information and then evaluate the corrected warrant for probable cause. *Bagby v. Bronhaver*, 98 F 3d. 1096 (8th Cir. 1998). Probable cause is analyzed at the time of the arrest, therefore "any later developed facts are irrelevant to the probable cause analysis for an arrest." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008).

Plaintiff failed to allege any facts indicating Defendant Hartwell engaged in intentional or reckless misrepresentation in order to gain the arrest warrant. Based on Plaintiff's own testimony, Defendant Hartwell relied upon information from the Willis incident report and Plaintiff's criminal history. The Willis incident report indicates Plaintiff's neighbor, Ms. Pumphrey, reported Plaintiff firing a pistol inside city limits. She also indicated he was a convicted felon and believed he was on parole. The report indicates Willis checked Plaintiff's status and found he was a convicted felon on parole, with "an extensive past criminal history including violent charges" and was a parolee on active supervision.

Plaintiff presented no facts or allegations which would indicate Defendant Hartwell or Officer Willis had any reason to disbelieve Ms. Pumphrey's report at the time the arrest warrant was sought or the arrest was made.[3] In his affidavit, Defendant Hartwell stated he "had no reason to disbelieve or discredit the information relayed to the EDPD by Ms. Pumphrey." ECF No. 61-3. At his hearing, Plaintiff pointed out discrepancies between the Willis report and the arrest warrant affidavit as evidence of Hartwell's misrepresentation. Specifically, Plaintiff stated that the Willis report said Ms. Pumphrey approached him, while the affidavit said Willis was summoned to Ms. Pumphrey's house. A review of the two documents reveals this to be correct, but the discrepancy is not material. Plaintiff also stated Hartwell changed Pumphrey's words concerning his felon status, but did not elaborate as to how. He challenged this as hearsay. The only discrepancy the Court can discern is that the Willis report indicates Pumphrey stated she knew he was a felon and believed he was on parole. The affidavit indicates Pumphrey stated he was a convicted felon and Plaintiff had told her he was on parole. Plaintiff testified he did not disagree with what Pumphrey stated, just the changes Hartwell made in his affidavit. There is no dispute concerning the accuracy of Plaintiff's criminal history or parolee status, which matched Ms. Pumphrey's statements. None of the alleged "changes" deleted exculpatory evidence or detracted from the probable cause shown in the Hartwell affidavit. *See Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1998) (officer may not ignore exculpatory evidence, but does not need to conduct a mini-trial before arresting based on credible eyewitness claims or other indicia of probable cause).

---

[3] Plaintiff testified that Pumphrey lied, and used the El Dorado police department to retaliate against him in a personal vendetta. However, he provided no facts or allegations that either Willis or Hartwell had reason to know of this vendetta. Nor may Plaintiff include Pumphrey as a Defendant in this § 1983 suit, as she is a private party. *See Youngblood v. Hy-Vee Food Stores, Inc.*, 226 F.3d 851, 855 (8th Cir. 2001) ([A] private party's mere invocation of state legal procedures does not constitute state action.")

11

Hartwell had both an incident report where a credible eyewitness reported Plaintiff firing a gun inside city limits when he was a convicted felon on parole, and he corroborated that information with Plaintiff's criminal history. He then sought and received an arrest warrant from a Union County District Court judge based on that information. *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) ("the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner"). The fact that the case against Plaintiff was ultimately dropped is irrelevant to the analysis of probable cause at the time of arrest.

Plaintiff fails to allege any facts indicating Defendant Hartwell engaged in intentional or reckless misrepresentation in order to gain the arrest warrant.

**4.     CONCLUSION**

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 60) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 19th day of January 2017.**

                                                     /s/ Barry A. Bryant  
                                                     HON. BARRY A. BRYANT  
                                                     UNITED STATES MAGISTRATE JUDGE